**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

|                                    |   |                    |
|------------------------------------|---|--------------------|
| DAVID CORBIN                       | ) |                    |
|                                    | ) |                    |
|     Plaintiff, | ) |                    |
|                                    | ) |                    |
|   vs.                    | ) | NO. 3:16-CV-00602  |
|                                    | ) |                    |
| STATE OF INDIANA,                  | ) |                    |
| CORIZON HEALTH, INC., and          | ) |                    |
| DR. CARA MISETIC                   | ) |                    |
|                                    | ) |                    |
|     Defendants.| ) |                    |

## OPINION AND ORDER

This matter is before the Court on the Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies, filed by the State of Indiana, Corizon Health, Inc., and Dr. Cara Misetic (together, "Defendants") on December 9, 2016 (DE #15). For the reasons set forth below, Defendants' motion for summary judgment (DE #15) is **DENIED**. Within fourteen (14) days of this order, Defendants are **ORDERED** to file a notice advising whether they wish to waive their exhaustion defense or proceed with a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

BACKGROUND

David Corbin ("Corbin"), an inmate within the Indiana Department of Corrections ("IDOC"), brings an action pursuant to 42 U.S.C. § 1983 based on allegations that Defendants denied services to Corbin and failed to reasonably protect him from a

-1-

known substantial risk of harm that ultimately caused his attempted suicide, in violation of the Rehabilitation Act, the Americans with Disabilities Act, and the Eighth and Fourteenth Amendments to the Constitution of the United States. Corbin filed his complaint in LaPorte Superior Court on August 9, 2016 ("Complaint"). The Complaint alleges that Defendants placed Corbin in solitary confinement, *i.e.,* segregated housing, at the Westville Correctional Facility ("Westville") from January 2012 to September 2014, denied him placement in a non-segregated housing unit, failed to provide him with basic psychological care and mental health services, and refused to transfer him to a unit where he could receive services for his mental disabilities. (DE #3, ¶¶8-9, 12.) The Complaint further alleges that Defendants knew that Corbin had mental disabilities, but kept him in segregated housing and denied him basic psychological care, mental health services and contact with other human beings, knowing that doing so would cause him to mentally decompensate. (*Id.*, ¶¶ 9, 11, 13.) Defendants allegedly failed to intervene to prevent Corbin from mentally decompensating to the point of attempting suicide on September 15, 2014. (*Id.*, ¶14.)

This action was removed to the Northern District of Indiana, and Defendants filed the instant motion for summary judgment on December 9, 2016, arguing that Corbin's claims fail because he did not exhaust his available administrative remedies. Corbin filed

a response in opposition to the motion on February 7, 2017. Defendants filed a reply memorandum on February 21, 2017. This motion is fully ripe and ready for adjudication before this Court.

SUMMARY JUDGMENT STANDARD

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine dispute of material fact exists, the Court must construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion may not rely on allegations in his own pleading but rather must "marshal and present the court with the evidence [he] contends will prove [his] case." *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010).

FACTS

The Grievance Process

The IDOC uses the Offender Grievance Process, an administrative process that offenders committed to the IDOC may use to resolve concerns and complaints relating to conditions of their confinement. (DE #16-1, Aff. of Troy Cambe, ¶4.) Upon intake into Westville, offenders are provided with orientation regarding how the grievance process works, and where to locate grievance forms. (*Id.*, ¶5.) The grievance process has three steps: (1) an attempt to informally resolve the complaint; (2) the filing of a grievance form; and (3) the filing of an appeal. (*Id.*, ¶8.) The first step requires the offender to discuss the complaint with either the staff person responsible for the situation, or, if no such person exists, with the person in charge of the area in which the situation occurs. (*Id.*, ¶9.) If the grievance is not resolved, the offender may proceed to the second step and file an Offender Grievance Form. (*Id.*, ¶10.) This form must be filed within twenty working days from the date of the incident giving rise to the complaint or concern. (*Id.*, ¶11.) If a grievance is denied, the offender may proceed to step three, and file a grievance appeal for further review. (*Id.*, ¶12.) Records of grievances and appeals are maintained and tracked by IDOC. (*Id.*, ¶13.)

The Classification Appeal Process

The IDOC maintains an administrative process that offenders committed to the IDOC may use to appeal intra-facility classification decisions such as placement in specific housing units, or changes in education or work assignments. (DE #16-5, Aff. of Jacqueline Salyer, ¶4; DE #16-6, at 10-11.) Offenders may also appeal inter-facility classification transfer decisions. (DE #16-6, at 11-12.) Upon intake into Westville, offenders are provided with orientation regarding how the classification appeal process works, and where to locate classification appeal forms. (DE #16-5, ¶5.) To initiate a classification appeal, the offender submits a written appeal on State Form 9260 within ten working days from the date the offender received the classification decision at issue. (*Id.*, ¶8; DE #16-6, at 10-12.) The classification appeal form is reviewed, and a decision is rendered on the appeal. (DE #16-5, ¶9; DE #16-6 at 11-12.)

Corbin's Background and Grievance History

Corbin was incarcerated at Westville from January 28, 2012, until September 16, 2014. (DE #16-5, ¶12; DE #25-1, Aff. of David Corbin, ¶2.) He is currently incarcerated at the New Castle Correctional Facility ("New Castle"). (DE #25-1, ¶2.) Corbin suffers from several mental conditions, including clinical depression, panic disorder, and post-traumatic stress disorder. (*Id.*, ¶3; DE #25-3.) As a result of these conditions, Corbin

experiences: difficulties with sleeping, including nightmares; flashbacks of witnessing his cousin's suicide; extreme feelings of sadness, hopelessness and helplessness; difficulties with concentration and memory; agitation; panic attacks; and overwhelming urges to hurt and kill himself. (DE #25-1, ¶3.)

Corbin was first placed in an administrative segregated unit beginning on May 6, 2013. (DE #16-5, ¶13.) He was transferred to another segregated cell on August 15, 2014. (*Id.*) While in the segregated unit, Corbin was kept in a segregated cell for 23 out of 24 hours each day. (DE #25-1, ¶4.)

The IDOC has records of six grievances filed by Corbin while he was incarcerated at Westville between January 2012 and September 2014. Five grievances addressed issues such as visitation, mail, operations, and food services, and were not appealed by Corbin. (DE #16-1, ¶18; DE #16-3.) Corbin filed a grievance on October 16, 2013, regarding a medical issue, specifically, his neck pain. (DE #16-1, ¶17; DE #16-4.) This grievance did not refer to Corbin's mental health or placement in segregation. (DE #16-1, ¶17; DE #16-4.) Corbin appealed this grievance on November 18, 2013, and the appeal was denied. (DE #16-4.)

Corbin attests that he submitted written complaints relating to his placement and failure to receive adequate mental health services while in segregation at Westville. (DE #25-1, ¶14.) He maintains that he requested a "transfer to a facility where [he]

could receive appropriate care," but it was denied. (*Id*.) Corbin was told by "a Miss Tody" ("Tody") that this was a transfer issue that could not be addressed through the grievance process, but rather, had to be addressed through the classification appeal process.[1]  (*Id*.)  As a result, Corbin did not complete any grievances or grievance appeals at Westville addressing "the failure to transfer [him] into a unit where [he] would receive appropriate and adequate mental health services." (*Id*.)

Corbin filed two classification appeals while incarcerated at Westville. (DE #16-5, ¶14.) He submitted a classification appeal on August 31, 2012 ("August 31, 2012 Classification Appeal"), complaining that he was not given the opportunity to participate in a hearing. (DE #16-7.)  This classification appeal was denied. (*Id*.)[2]

---

[1] The record is unclear as to when Tody allegedly made these statements to Corbin.

[2] Corbin claims that he filed a classification appeal dated August 3, 2012, to appeal "IDOC personnel's decision to keep me on long term segregation/Department wide administrative segregation." (DE #25-1, ¶16.)  It is unclear whether Corbin intended this to refer to the August 31, 2012 Classification Appeal.  The August 31, 2012 Classification Appeal form does not make any reference to Corbin's placement in segregation.  (DE #16-7.)  Regardless, Corbin does not dispute that he was first placed in administrative segregation beginning on May 6, 2013, several months *after* he submitted a classification appeal in August 2012. (DE #16-5, ¶13.)  Moreover, because Corbin does not argue that he exhausted his administrative remedies by filing a classification appeal in August 2012, any disputes regarding the timing or subject of this classification appeal are immaterial.

Corbin submitted another classification appeal over a year after being placed in a segregated unit. (DE #16-5, ¶16; DE #16-8.) Corbin had asked to be transferred to New Castle, but his request was denied on June 3, 2014. (DE #16-8.) Corbin attests that in or around June 2014, he was told to file a classification appeal regarding "the failure to transfer [him] to a prison unit where [he] could obtain the psychiatric services [he] needed." (DE #25-1, ¶15.) On June 10, 2014, Corbin submitted a classification appeal form challenging the denial of his transfer request ("June 2014 Classification Appeal"). (*Id*; DE #16-8.) Corbin based his appeal on the following reasons:

> I have <u>over</u> a year [sic] clear conduct, I have no escape related conduct since 2005. I have completed anger management. I have completed The Act Program. I am actively involved with [sic] Psych Dept. and taking medication. I am 39 yrs old and not the same carefree kid I was and now respect authority and abide by rules as reflected by my conduct and actions. I am actively self improving and want to be in programs. I have paid <u>greatly</u> for my past wrongs and deserve the opportunity to move past my past and be treated for my <u>current</u> status and actions which do show I've changed. The Unit Team and Psych Dept agree I should be given a chance to succeed in positive things and to pursue further self help program [sic] I can only get in population. They are around me and see the way I've changed. All I ask is for you to have faith in me and in your staff [sic] judgment and allow me to take next step [sic] to progress.

(DE #16-8 (emphasis in original).) This appeal was denied on June 26, 2014, with a note that Corbin needed further observation, and that his request "can be renewed in 6 months." (*Id.*)

On or about August 29, 2014 to September 2, 2014, Corbin was moved to a suicide precaution cell at Westville. (DE #25-1, ¶5.) Corbin remained in the suicide precaution cell for about a week. (*Id.*) While in that cell, Corbin asked a couple of prison officers if he could have a pen or pencil, but this request was denied. (*Id.*, ¶6.) Corbin attests that he experienced increasing problems with his memory and concentration while in this cell. (*Id.*)

When Corbin was returned to a segregated cell, he continued to feel extremely agitated, helpless and hopeless, was unable to concentrate enough to write, and had overwhelming suicidal thoughts. (*Id.*, ¶7.) Corbin attests that he tried to complete the first step of the grievance process by speaking with Team Manager Mr. Lowery ("Lowery"). (*Id.*, ¶17.) Lowery told Corbin that he could not file a grievance about not being transferred to a treatment unit, but rather, had to file a classification appeal. (*Id.*) Lowery also told Corbin that he could not file a new classification appeal because his earlier appeal had been denied, and he had to wait six months. (*Id.*) Corbin claims that he did not submit a new classification appeal or an informal grievance because of what Lowery told him. (*Id.*)

Corbin attempted suicide on September 15, 2014, by cutting his wrists and hanging himself. (*Id.*, ¶7.) He was transferred to New Castle the following day. (*Id.*) When Corbin arrived at New Castle, he was placed in a "rubber room" in isolation for five to

seven days. (*Id.*, ¶8.) Corbin asked two prison guards for grievance forms, but the guards refused to supply him with the forms or with a pen or pencil. (*Id.*)

Once Corbin was moved from the "rubber room" to a segregated cell, he spoke to the "grievance officer at New Castle" regarding his complaint relating to his suicide attempt at Westville. (*Id.*, ¶10.) According to Corbin, the grievance officer told him to "do a Grievance" and send it to the grievance specialist at Westville. (*Id.*) Relying on her advice, Corbin completed a grievance form on September 23, 2014, and mailed it to Westville ("September 2014 Grievance"). (*Id.*, ¶¶10-11.) Corbin attests that the September 2014 Grievance addressed Westville's failure to transfer him sooner to a prison unit where he could receive adequate treatment for his mental illness and its failure to provide adequate care to prevent him from deteriorating to the point of attempting suicide on September 15, 2014. (*Id.*, ¶11.) Corbin never received a response to this grievance. (*Id.*, ¶12.)

Corbin later spoke to the "Grievance Specialist at New Castle" regarding the status of the September 2014 Grievance. (*Id.*) The Grievance Specialist told Corbin that there was no record of it, and "that there was nothing [Corbin] could do about it now." (*Id.*) Corbin attests that he did not pursue any further grievances regarding Westville's failures because of what he was told. (*Id.*)

Corbin's belongings, including a copy of Westville's grievance procedure, were delivered to Corbin several weeks after his transfer to New Castle. (*Id.*, ¶¶9, 13.) Corbin did not have a copy of Westville's grievance procedure until he received his belongings. (*Id.*, ¶9.) Corbin received a copy of New Castle's grievance procedure approximately one month after his arrival there, after he had attempted to file the September 2014 Grievance. (*Id.*, ¶13.)

DISCUSSION

Defendants argue that the Court should grant their motion for summary judgment because Corbin failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The PLRA provides that inmates are prohibited from bringing an action in federal court with respect to prison conditions until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust before bringing his lawsuit, and efforts to exhaust while the case is pending do not satisfy 42 U.S.C. § 1997e(a). *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) ("exhaustion must precede litigation"). The failure to exhaust is an affirmative defense on which the defendant bears the burden of proof. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (citation omitted).

The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Id*. Therefore, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred." *Id*. at 1023.

The record reflects that: (1) Westville had an Offender Grievance Process and a Classification Appeal process in place at the time of the events at issue; (2) Corbin had utilized both processes repeatedly, having filed six grievances, one grievance appeal, and two classification appeals while incarcerated at Westville; and (3) while Corbin was incarcerated at Westville, he did not file a grievance regarding Defendants' alleged failures that precipitated his attempted suicide. Relying on these undisputed facts, Defendants maintain that Corbin failed to exhaust administrative remedies under the PLRA. In response, Corbin argues that his June 2014 Classification Appeal exhausted his administrative remedies. He also contends that the Offender Grievance Process was not available to him due to the actions of prison personnel and his own deteriorated psychiatric condition.

Corbin maintains that his June 2014 Classification Appeal exhausted administrative remedies under the PLRA. While Defendants attempt to distinguish between Corbin's complaints about mental health services and the denial of his transfer request, they admit that Corbin could have "utilize[d] one or both systems," *i.e.,* the grievance process or the classification appeal process, to address his complaints about the conditions of his confinement. (DE #27 at 2.) Defendants argue that the June 2014 Classification Appeal was not a proper appeal of Corbin's assignment to segregation because it was filed over a year after he was placed in administrative segregation in May 2013. However, the IDOC accepted the June 2014 Classification Appeal and resolved it on the merits. "[W]hen a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action." *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).[3]

Defendants also assert that Corbin did not exhaust his administrative remedies because the June 2014 Classification

---

[3] Courts have applied case law addressing grievances where a prisoner was supposed to, and did, utilize the classification appeal process. *See, e.g., Littler v. Indiana Dep't of Corr. Com'r,* No. 3:11-CV-218 CAN, 2013 WL 1149607, at *7 (N.D. Ind. Mar. 19, 2013) (citing *Riccardo*, 375 F.3d at 523-24).

Appeal fails to properly raise the claims forming the substance of Corbin's Complaint. "As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Riccardo*, 375 F.3d at 524; *see McDaniel v. Meisner*, 617 F. App'x 553, 557 (7th Cir. 2015) (where regulations are silent, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought") (citation omitted); *Peterson v. Rogan,* No. 2:11–CV–0007, 2012 WL 4020996, at *3 (S.D. Ind. Sept. 12, 2012) (a grievance appeal must contain the same subject matter as the lawsuit to effectively exhaust administrative remedies). The Complaint alleges that Defendants failed to provide Corbin with basic psychological care and mental health services, refused to transfer him to a non-segregated unit where he could receive services for his mental disabilities, and denied him human contact knowing that doing so would cause him to mentally decompensate. It also alleges that Defendants failed to prevent Corbin from mentally decompensating to the point of attempting suicide.

Corbin claims that he challenged the denial of his transfer request in the June 2014 Classification Appeal because he needed to be treated for his current mental health and psychiatric status, and needed access to therapeutic programs that were not available in the segregated unit at Westville. However, the June 2014

Classification Appeal form does not alert Defendants to the nature of the wrongs alleged in Corbin's Complaint. *See Peterson*, 2012 WL 4020996, at *3 (noting that a plaintiff's characterization of his grievances can be overcome by the grievance documents themselves). The June 2014 Classification Appeal form states that Corbin appealed the denial of his request "to send me to New Castle 'step down' as I finished Act Program." (DE #16-8.) On the form, Corbin explained that he sought the appeal because he had "over a year of clear conduct," had completed anger management and the "Act Program," was "actively self improving," and "now respect authority and abide by rules as reflected by my conduct and actions." (*Id*.) He stated that he was "actively involved" with the psychology department, was taking medication, and that the psychology department agreed that he "should be given a chance to succeed in positive things and to pursue further self help program [sic] I can only get in population. They are around me and see the way I've changed."[4] (*Id*.) Corbin stated that he had "paid greatly for my past wrongs and deserve the opportunity to move past my past and be treated for my current status and actions which do show I've changed," and asked that he be allowed "to take next step [sic] to progress." (*Id*.)

---

[4] The Court reasonably infers that "population" refers to the general prison population.

The June 2014 Classification Appeal does not indicate that Corbin was mentally decompensating in the segregation unit, or that being denied human contact was harming him psychologically. Nor does it indicate that Corbin was being denied basic psychological care, or that participating in programs in the general prison population was necessary to provide basic services for his mental disabilities. Because the June 2014 Classification Appeal does not alert Defendants to the nature of the wrongs alleged in Corbin's Complaint, it does not exhaust his administrative remedies with respect to the claims alleged in the Complaint.

<u>Unavailability of Administrative Remedies</u>

Corbin argues that even if the June 2014 Classification Appeal did not exhaust his administrative remedies, the PLRA does not prevent him from proceeding with his claims because Westville's administrative remedy procedure was unavailable to him. Under the PLRA, prisoners are only required to exhaust administrative remedies that are "available." *See Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("Remedies that are genuinely unavailable or nonexistent need not be exhausted."). "A remedy becomes unavailable if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting. In such cases, the prisoner is considered to have exhausted his administrative remedies." *Id*.

(internal citations and quotation marks omitted). "In determining whether an administrative remedy was effectively unavailable, the question is whether the inmate did 'all that was reasonable to exhaust' under the circumstances." *Jimmerson v. Meyers*, No. 3:14-CV-342, 2014 WL 3734181, at *3 (N.D. Ind. July 28, 2014) (quoting *Dole*, 438 F.3d at 812). When there are disputed issues of fact pertaining to whether the prisoner exhausted, the Court is required to hold a hearing to resolve those disputes. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)(indicating that a judge, not a jury should resolve initial disputes about exhaustion in prisoner cases, and setting forth the procedure to be followed in doing so).

Corbin maintains that the actions of prison personnel prevented him from exhausting administrative remedies between June 2014 and October 2014. First, Corbin attests that Tody told him that the denial of his request to transfer to a facility where he would receive appropriate care had to be addressed through the classification appeal process, rather than the grievance process. Corbin maintains that based on Tody's statements, he did not complete any grievances or grievance appeals regarding Westfield's failure to transfer him to a unit where he would receive appropriate mental health services. *See Thomas v. Reese*, 787 F.3d 845, 847-48 (7th Cir. 2015) (administrative remedies were unavailable where a prison officer misled a prisoner into believing

he could not file a grievance when in fact he could).  Defendants
do not address Tody's alleged statements, or Corbin's alleged
reliance on them, but state that Corbin was responsible for
understanding the policies and procedures available to him.
Defendants argue that Corbin offers no evidence that the
classification appeal process was not available to him within ten
days of his assignment to another segregation cell on August 15,
2014.  However, the denial of the June 2014 Classification Appeal
indicates that prison officials would not review Corbin's transfer
request until six months had passed.

Second, Corbin asserts that his administrative remedies were
unavailable because prison guards denied his requests for writing
utensils and grievance forms while he was in a suicide precaution
cell in Westville and in a "rubber room" at New Castle.  *See Dale
v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (administrative
remedies were unavailable where prison officials thwarted a
prisoner's efforts to exhaust by failing to provide him with the
necessary forms).  Once released from the "rubber room," Corbin
claims that he was not provided with copies of the Westville and
New Castle grievance procedures until nearly one month after his
arrival at New Castle.  Defendants respond that Corbin's lack of
a writing utensil for a period of days does not excuse his failure
to file grievances about the mental health care he received for
the preceding two years.  They also note that Corbin utilized the

-18-

grievance process several times, and the classification appeals process twice, indicating that he was aware of both processes.

Third, Corbin maintains that he made reasonable efforts to complete the grievance process, but that those efforts were met with a non-response from Westville. He tried to complete the informal step of the grievance process by speaking with Lowery about his complaint of not being transferred to a treatment unit. Corbin attests that he did not file a grievance or new classification appeal because Lowery told him that he could not file a grievance about his complaint, or file a new classification appeal for six months. After Corbin's suicide attempt and his transfer to New Castle, he allegedly relied on the advice of the New Castle grievance officer, and prepared and mailed the September 2014 Grievance to Westville. When Corbin followed up with the New Castle Grievance Specialist, she told him that there was no record of the September 2014 Grievance, and that there was nothing Corbin could do about it. Corbin maintains that he did not submit any additional grievances based on the New Castle Grievance Specialist's statements. *See Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011) ("An administrative remedy is not 'available,' and therefore need not be exhausted, if prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it.") (citations omitted). Defendants do not respond to the statements allegedly

made by Lowery, the New Castle grievance officer, or the New Castle Grievance Specialist. Nor do Defendants address Corbin's alleged reliance on those statements.

Corbin also contends that his deteriorated psychiatric condition prevented him from exhausting administrative remedies during the period between his placement in the suicide precaution cell at Westville and his release from the "rubber room" at New Castle. *See Weiss v. Barribeau*, No. 16-3039, 2017 WL 1291716, at *2 (7th Cir. Apr. 7, 2017) (reversing summary judgment based on failure to exhaust administrative remedies, noting that "[g]iven the questionable state of [the prisoner's] mental stability at the time, we cannot have any confidence that administrative remedies actually were available to him"). Corbin claims that during this time, he suffered serious impairments with memory and concentration, along with other symptoms, and could not sit still, draw or write, which caused him to be unable to prepare a grievance. (DE #26 at 20-21; DE #25-1, ¶¶6, 7.)

Defendants respond that Corbin was sufficiently mentally competent to file a grievance relating to his current claims because he had filed several other grievances while incarcerated at Westville. They insist that Corbin cannot choose his periods of lucidity by saying he was not mentally competent to file grievances about the issues raised in his Complaint, when he was able to file grievances about other issues not raised in his

Complaint. But "[t]he ability to take advantage of administrative grievances is not an 'either-or' proposition," and the availability of an administrative process may change over time. *Kaba v. Stepp*, 458 F.3d 678, 685-86 (7th Cir. 2006) (requiring a "more discriminating analysis" where a prisoner alleged that his access to the administrative process varied due to threats and intimidation by prison staff). While Defendants contend that Corbin offers no reason why he failed to file a grievance related to his mental health care before being moved to a suicide precaution cell, they ignore Corbin's claim that Tody told him that he had to use the classification appeal process, rather than the grievance process, to address his complaint about being denied a "transfer to a facility where [he] would receive appropriate care." (DE #25-1, ¶14.)

Given the ambiguity in the record, Defendants have not demonstrated an entitlement to summary judgment. They will be afforded an opportunity to demonstrate at an evidentiary hearing that the grievance process was available to Corbin. *See Pavey*, 544 F.3d at 742. If they do so, and Corbin did not properly exhaust his administrative remedies as required by the PLRA, the case must be dismissed. If the grievance process was effectively unavailable to Corbin, he would be excused from failing to exhaust. *See Dole*, 438 F.3d at 809.

Because summary judgment cannot be granted on the present record, Defendants' motion is **DENIED**. Unless Defendants withdraw their exhaustion defense, it will be necessary to hold a hearing pursuant to *Pavey* to resolve the following issues:

(1) what issues Corbin raised in his discussions with Tody and Lowery regarding the conditions of his confinement, what each of them told Corbin about his ability to file grievances and/or classification appeals regarding those issues, and the dates of those conversations;

(2) whether Corbin was unable to prepare a grievance due to prison guards' refusal to provide him with writing utensils and/or grievance forms while he was held in a suicide precaution cell at Westville and in a "rubber room" at New Castle;

(3) whether Corbin was unable to prepare a grievance due to a deteriorated mental state during the time period when he was first placed in a suicide precaution cell at Westville until his release from a "rubber room" at New Castle, and the dates of that time period;

(4) what the New Castle grievance officer told Corbin regarding how to file a grievance about his treatment at Westville, and the dates on which those statements were made;

(5) whether Corbin prepared and mailed the September 2014 Grievance to Westville, and the date(s) on which he did so;

(6) what issues were raised in the September 2014 Grievance;

(7) what the New Castle Grievance Specialist told Corbin regarding the lack of a record of the September 2014 Grievance, whether she told Corbin that there was nothing that he could do about it, and the dates on which those statements were made; and

(8) the date(s) on which Corbin received copies of the Westville grievance procedure and New Castle grievance procedure while he was incarcerated at New Castle.

CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (DE #15) is **DENIED.** Within fourteen (14) days of this order, Defendants are **ORDERED** to file a notice advising whether they wish to waive their exhaustion defense or proceed with a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

**DATED: April 26, 2017**            **/s/ RUDY LOZANO, Judge**
                                     **United States District Court**