# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| DAVID CORBIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:16CV602-PPS/MGG |
| | ) |
| STATE OF INDIANA, CORIZON HEALTH, | ) |
| INC., and DR. CARA MISETIC, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

David Corbin, a prisoner of the State of Indiana, suffers from mental disabilities, including depression, post traumatic stress disorder, and severe anxiety. While incarcerated at the Westville Correctional Facility, Corbin attempted suicide. He claims that the defendants knew of the seriousness of his mental condition and failed to provide basic psychological care and services, resulting in his suicide attempt. He brings this action under 42 U.S.C. § 1983 and federal disabilities laws. The defendants Corizon Health, Inc. and the State of Indiana have moved for judgment on the pleadings. The parties have since stipulated to the dismissal of some claims against Corizon. However, the State of Indiana's motion seeking judgment on the pleadings for Corbin's claims based on federal disabilities laws remains ripe. For the reasons that follow, the State's motion will be denied.

## Background

I take these facts, which I accept as true, from Corbin's complaint, though as it will become clear, the facts are not so fulsome. In 2004, Corbin was sentenced to a term of

imprisonment. [DE 3 at 3 ¶6.] I don't know for how long or for what. Corbin was transferred to the Westville Correctional Facility in January 2012. [*Id.* at 3 ¶7.] Westville is a prison operated by the defendant State of Indiana. [*Id.* at 2 ¶3.] The State has contracted with Corizon Health, Inc. to provide mental health services to prisoners like Corbin while housed at Westville. [*Id.* at 2 ¶4.] Corbin was housed in solitary confinement for more than two years while at Westville. [*Id.* at 3 ¶8.] There is no information in the complaint as to why Corbin was placed in solitary confinement.

Corbin alleges that, while housed in solitary confinement, he did not receive basic psychological care and services. The State also refused to transfer him to a non-segregated housing unit. According to Corbin, the State knew of his mental disabilities, which include serious depression, post traumatic stress disorder, and severe anxiety, and also knew that if Corbin was segregated and denied mental health services, his condition would further deteriorate. [*Id.* at 3 ¶¶9-11.]

In 2014, Corbin made repeated requests to Dr. Cara Misetic, who appears to be a doctor with Corizon (though there is little information about her in Corbin's complaint) to be transferred to a prison unit where he could receive services for his mental disabilities. In late August or early September 2014, Corbin was placed on suicide watch for several days. It is not clear from the complaint what prompted this. Even during the suicide watch period, Corbin received "no or few mental health services." [*Id.* at 4 ¶¶12-13.]

On or about September 15, 2014, Corbin attempted suicide by cutting his wrists and hanging himself. The complaint doesn't say this, but it appears that he survived this

attempt, since he is bringing this action. At the time of his attempted suicide, a request to transfer Corbin to a different prison unit where he could receive mental health services was pending before Corizon and Dr. Misetic. [*Id.* at ¶¶14-15.]

## Analysis

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A suit is properly dismissed on a Rule 12(c) motion when a plaintiff's allegations "show that there is an airtight defense" for which he "has pleaded himself out of court." *Richard v. Mitcheff*, 696 F.3d 635, 637-38 (7th Cir. 2012). "A court will grant a Rule 12(c) motion only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Brunt v. Serv. Emp. Int'l Union*, 284 F.3d 715, 718-19 (7th Cir. 2002).

A Rule 12(c) motion is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although I draw all reasonable inferences and facts in favor of the nonmovant, I need not accept as

true any legal assertions. *Vesely v. Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir.2014).

The State of Indiana has moved for judgment on the pleadings on the basis that Corbin has failed to identify any service, activity, or program to which he was excluded, and he has not sufficiently alleged a causal connection between the discrimination and his attempted suicide. "In order to make out a prima facie case of discrimination under both the ADA and the Rehabilitation Act, a plaintiff must show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability." *Novak v. Bd. of Trustees of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015). The Rehabilitation Act also requires that the program received federal financial assistance. *Id.*

The State argues that Corbin failed to sufficiently allege that Corbin was excluded from some service, activity, or program "based on his disability." According to the State, denying a prisoner medical treatment does not suffice for purposes of the federal disabilities acts because it is not a "service, program, or activity" within the meaning of the ADA or Rehabilitation Act. The State also challenges causation on two grounds, arguing that it makes no sense to say that Corbin was denied mental health services because he was mentally ill, and that even if it did, Corbin's assertion that he was denied services "because of his disability" is simply a legal conclusion that I'm not required to accept as true. In addition, the State claims that Corbin must prove intentional discrimination in order to receive compensatory damages, which he has not done here.

4

The first question I must answer is whether medical treatment is a "service, program, or activity" within the meaning of the ADA or Rehabilitation Act. "[A] prison official does not violate the ADA when failing 'to attend to the medical needs of ... disabled prisoners." *Resel v. Fox*, 26 F. App'x 572, 577 (7th Cir. Dec. 20, 2001) (quoting *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)). A claim for inadequate medical treatment is improper under the ADA. *Id.* Rather, the proper avenue for seeking relief for inadequate medical treatment is through an Eighth Amendment claim. *Perrey v. Donahue*, 2007 WL 4277621, at *4 (N.D. Ind. Dec. 3, 2007). Likewise, the Rehabilitation Act "was not intended to require prison officials to provide medical treatment to prisoners with serious medical needs," but rather to increase employment of the handicapped. *Id.*

On the other hand, medical services are among those "services, programs, or activities" that are covered by the ADA. *See United States v. Georgia*, 546 U.S. 151, 157 (2006). Some courts have allowed plaintiffs to proceed on an ADA claim when they were deprived of access to medical services that were available to other inmates. *See Estate of Crandall v. Godinez*, 2015 WL 1539017, at *6 (C.D. Ill. Mar. 31, 2015) (citing *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 286087 (1st Cir. 2006); *McNally v. Prison Health Servs.*, 46 F. Supp. 2d 49, 58-59 (D.Me. 1999); *Allah v. Goord*, 405 F. Supp. 2d 265, 279-81 (S.D.N.Y. 2005)).

For example, in *McNally v. Prison Health Services*, the plaintiff prisoner, who was HIV positive, contended that the jail discriminated against him because of his HIV-positive status by denying him immediate access to prescribed medications, a service provided to

5

detainees in need of prescriptions for other illness. 46 F. Supp. 2d at 58. The allegation was that, because he was HIV positive, he was subject to a different medical policy than other sick inmates, which resulted in him being completely denied prescription services for a period of time. This, the court held, was sufficient to withstand summary judgment. *Id.* at 58-59.

Likewise, in *Allah v. Goord*, the plaintiff prisoner was paralyzed from the waist down and confined to a wheelchair. 405 F. Supp. 2d at 270. The plaintiff claimed that the prison's failure to provide safe transportation to and from outside medical providers constituted discrimination in violation of the ADA and Rehabilitation Act. *Id.* at 278-79. The district court agreed and denied the defendants' motion to dismiss, reasoning that the "plain language of the ADA demonstrate that the statute was designed to ensure that disabled persons are neither denied access to, nor the *benefits of* services based on their disability." *Id.* at 280-81 (emphasis in original).

I find these cases persuasive and will allow Corbin's ADA and Rehabilitation Act claim to proceed. Corbin alleges that he was intentionally excluded from programs and activities that were available to prisoners without disabilities. Corbin's complaint alleges that he was not "provide[d] basic psychological care and services," that the State "denied him mental health services," and "refused requests to transfer Mr. Corbin to a prison unit where he could receive services for his mental disabilities." [DE 3 at 3-4 ¶¶9, 11, 12.] Corbin also alleges that these services were afforded to individuals without disabilities. [*Id.* at 4 ¶16.] Reading Corbin's complaint in the light most favorable to him, I can

plausibly infer that he was denied basic psychological care and services while he was housed in solitary confinement and that other inmates were afforded such services. While it may be the case that the evidence instead supports an Eighth Amendment claim based on inadequate medical treatment, at this stage, Corbin's allegations, if true, would support a claim under the ADA and Rehabilitation Act.

The State's next argument concerns causation. The ADA and the Rehabilitation Act have different causation standards. Under Title II, Corbin must show that he was denied a service, program, or activity "by reason of" his alleged disability. To make this showing, Corbin must satisfy a "but-for" causation standard. *Maxwell*, 2011 WL 4688825, at *8 (N.D. Ind. Oct. 3, 2011) (citing *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962-63 (7th Cir. 2010)). That Corbin's disability was a motivating factor, but not a determinative factor in the State's denial of a service, program, or activity, is insufficient under the ADA. *Serwatka*, 591 F.3d at 961. This standard is less demanding than the causation standard under the Rehabilitation Act, which requires Corbin to show that he was discriminated against "solely by reason of [his] handicap." *Grzan v. Charter Hosp. of N.W. Ind.*, 104 F.3d 116, 119 (7th Cir. 1997); *see also* 29 U.S.C. § 794(a).

The State points to two problems with Corbin's causation allegation: it is not sufficiently alleged and it is devoid of common sense. I'll admit that there is some appeal to the State's claim that Corbin's argument doesn't make sense. The only reason Corbin needed mental health services is because he has a mental disability. How can it be the case that it is precisely *because of* his mental disability that he didn't receive mental health

7

services treatment? That just doesn't follow.

However, there is another way to think about this that does make sense and which I can plausibly infer from the complaint. If the State put Corbin into solitary confinement because he is mentally disabled, and as a result of his placement in solitary confinement, Corbin was deprived of mental health services and care because inmates in solitary confinement at Westville don't receive such treatment, then Corbin's ADA and Rehabilitation Act claims is completely coherent. He was placed in solitary confinement only because of his disability, and as a result of his placement, he was deprived of a service (mental health treatment) that other inmates would ordinarily receive.

Corbin's complaint is quite bare on the causation point, which brings me to the State's other argument. With respect to the segregated housing placement, the complaint says only that "From January 2012 to September 2014, Defendant State kept Mr. Corbin locked in solitary confinement in Westville." [DE 3 at 3 ¶8.] In pleading causation, the complaint says only that the defendants "discriminated against Mr. Corbin on the basis of and because of his disabilities by denying him the benefits programs and services afforded to individuals without disabilities." [DE 3 at 5 ¶17.]

To buttress its argument that the allegation of causation is not sufficient, the State has pointed to an analogous case in which a deceased inmate's estate brought an ADA and Rehabilitation Act claim after the inmate committed suicide while housed in segregation. *Estate of Crandall v. Godinez*, 2015 WL 1539017 (C.D. Ill. Mar. 31, 2015). The inmate claimed that the prison had discriminated against him by placing him in a segregation cell. The

district court granted the defendants' motion to dismiss on the basis that the plaintiff had not pleaded facts that allowed an inference that the defendant placed him in segregation because of his disability. But importantly, the court also noted that the plaintiff had in fact pleaded a legitimate, non-discriminatory, and non-pretextual reason for housing the plaintiff in segregation – he had been investigated for an alleged theft of another prisoner's funds. *Id.*, at *7.

In our case, Corbin has no such fatal flaw in his pleadings. Although he doesn't provide much in the way of facts supporting causation, he does allege that he was placed in segregation and that he was denied the benefits, programs, and services afforded to individuals without disabilities because of his disability. Drawing all inferences in favor of Corbin at this stage, I am not prepared to dismiss his claim on this basis. Based on Corbin's complaint, I find it plausible to infer that he was placed in segregated housing because of his disability and that as a result of segregation, he was denied a service that is covered by the ADA and Rehabilitation Act. Moreover, Corbin has pled that the States' conduct was "intentional, willful, and wanton." [DE 3 at 5 ¶18.] This is enough to plausibly infer intentional discrimination, though again I acknowledge that this allegation could have included more information.

I admit that this is a close call. Corbin will have to climb a steep hill to substantiate the allegations of the complaint. But whether he can successfully do so is a question best left to the summary judgment phase of litigation.

Defendant Corizon has also filed a motion for judgment on the pleadings on the

ADA and Rehabilitation Act claims. However, the parties have since stipulated to the dismissal of these claims without prejudice. [DE 70.] Thus, pursuant to the parties' agreement, these claims – as against only Corizon – will be dismissed without prejudice. The constitutional claims against all of the defendants, brought under 42 U.S.C. § 1983, remain pending in this case.

## Conclusion

For the reasons set forth above, Defendant State of Indiana's Motion for Judgment on the Pleadings [DE 55] is DENIED.

Corizon Health, Inc.'s Motion for Judgment on the Pleadings [DE 53] is DENIED AS MOOT. The parties' Stipulation of Dismissal Without Prejudice [DE 70] is GRANTED. Plaintiff's claims brought under the Rehabilitation Act and Title II of the ADA against Corizon Health, Inc. are DISMISSED WITHOUT PREJUDICE.

**SO ORDERED**.

ENTERED: April 23, 2018.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT